NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NEVILLE T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.T., Q.T., S.T., A.S., *Appellees*.

No. 1 CA-JV 17-0234
FILED 12-14-2017

Appeal from the Superior Court in Mohave County
No. B8015JD201404047
B8015JD201404046
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Mohave County Legal Defender's Office, Kingman
By Eric Devany
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

J O H N S E N, Judge:

¶1          Neville T. ("Father") appeals the superior court's order terminating his parental rights.  We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2          Father is the parent of the four children at issue in these consolidated cases, the oldest of whom was born in 2003 and the youngest of whom was born in 2015.[1]  For most of the pendency of this case, Father lived with his girlfriend, who is the mother of three of the children.  The superior court also terminated her parental rights.  Only Father is a party to this appeal.

¶3          In mid-July 2014, the Department of Child Safety ("DCS") received a report that Father had left his eleven-year-old daughter to care for her sixteen-year-old brother, who is autistic, and her one-year-old brother while Father was at work.  At about the same time, DCS also received a report following the birth of Father's second daughter that Father's girlfriend, the infant's mother, was unable to care for her, and that Father did not visit the baby in the hospital.  The DCS case manager who visited the home in response to the report found it had electricity in only one room, was very hot, was infested with cockroaches, and was in disarray with a very unpleasant odor.

¶4          DCS took all the children into care and filed dependency petitions against Father alleging neglect based on domestic violence, substance abuse, failure to provide adequate housing and failure to provide

---

[1]     This court views the evidence in a light most favorable to sustaining the superior court's findings.  *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008).

adequate supervision.[2]  At the outset of the proceedings, DCS offered Father family reunification services and referrals for substance-abuse assessment, random urinalysis testing, counseling, parenting classes, parent-aide services and transportation to out-of-town services.  DCS also planned to provide in-home services to Father once he successfully completed the other services.  By December 2014, however, Father was not able or willing to engage in services, saying he preferred to wait to fully engage in services if and when ordered to after a finding of dependency by the court.

¶5            At the April 2015 dependency hearing, Father denied the allegations but submitted the issue of dependency to the court.  In July, DCS re-referred Father for substance-abuse assessment, urinalysis testing, parent-aide services and transportation.

¶6            Meanwhile, Father's girlfriend gave birth to another child in August 2015, and DCS filed a supplemental dependency petition, alleging neglect based on Father's two open dependency cases and failure to protect the children from his girlfriend's substance abuse.  Specifically, DCS alleged Father had not completed any of his case plan goals and continued to fail to show appropriate behavioral changes and parenting skills.    By November 2015, Father had submitted clean drug screens and had completed parenting classes, but failed to engage in individual counseling and domestic violence classes.  Father was unemployed, and DCS had safety concerns with his residence, primarily involving his girlfriend, that rendered it inappropriate for the children.

¶7            In December 2015, the superior court found Father's oldest daughter and two of her younger siblings dependent as to Father, and adopted a case plan of family reunification.  The court found the youngest child dependent the following month.

¶8            At a review hearing in June 2016, counsel for DCS noted Father was doing well; however, his girlfriend was not engaging in services and had been arrested on domestic violence charges.  According to the DCS lawyer, Father and the girlfriend were living together but claimed they were no longer romantically involved and were merely roommates.

¶9            Three months later, in September 2016, DCS remained concerned with Father's ability to safely parent the children due to his

---

[2]      The oldest son turned 18 during these proceedings and was not named in the severance order the court ultimately entered.

continued relationship with his girlfriend and his lack of social support. The superior court ordered the case plans changed to severance and adoption, and DCS moved to terminate Father's parental rights based on several grounds, including out-of-home placement.

¶10 In detailed orders following a February 2017 severance hearing, the superior court granted the motion to sever based, *inter alia*, on its finding that DCS proved, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c) (2017), that the children had been in an out-of-home placement for 15 months or longer, that Father had been unable to remedy the circumstances that caused the placement and there was a substantial likelihood that he would not be capable of exercising proper and effective parental care and control in the near future.[3]

¶11 Father filed timely notices of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶12 On appeal, Father argues the evidence did not support the superior court's findings that he been unable to remedy the circumstances that caused the children to be taken into care and that there was a substantial likelihood that he would not be capable of exercising proper and effective parental care and control in the near future.

¶13 "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). Even fundamental rights are not absolute, however. *Id*. A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the child's best interests. *See* A.R.S. §§ 8-533(B), -537(B) (2017); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41. Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports it. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶14 The superior court severed Father's rights and the girlfriend's rights to the children in the same minute entry order. The court noted that

---

[3] Absent material revisions after the relevant dates, we cite the current version of statutes and rules unless otherwise indicated.

the girlfriend had tested positive for methamphetamine early in the dependency, and, although she was drug-free in January and February 2016, she stopped testing after that and was inconsistent with parent-aide services. Although the girlfriend enrolled in an inpatient drug program in August 2016, she left the program early and against advice about 10 days later. The court also found the girlfriend was convicted of disorderly conduct/domestic violence in November 2013 and assault/domestic violence and disorderly conduct/domestic violence in June 2016. As for Father, the court found that although he completed his case plan of services, he continued to maintain a relationship with his girlfriend, whose pattern of drug use and domestic violence put the children at risk.

¶15 At the severance hearing, Father did not dispute that his girlfriend had a history of substance abuse and testified he believed she was continuing to abuse drugs even at the time of the hearing. Nevertheless, Father testified that she was not a danger to the children. Father testified that the girlfriend continued to live with him until October 2016, four months before the severance hearing, when he drove her to Los Angeles. He testified that the girlfriend returned to Arizona in December. Although Father denied he continued to have a relationship with the girlfriend and claimed he would not take her back if she returned to his residence, he admitted he received three or four telephone calls a week from her. The DCS case manager testified DCS received reports from Father's family that the girlfriend was present in Father's home in December. Although Father denied allowing the girlfriend into his home then, he conceded he brought the girlfriend to visits with the children in December.

¶16 The case manager reiterated her concern for the stability of Father's home due to the girlfriend's history of domestic violence, and her concern that Father would not protect the children from domestic violence from the girlfriend, who the case manager testified "has a tendency to show up" in Father's home. The case manager testified DCS remained concerned the girlfriend was not out of the home permanently and had grave concerns regarding her ongoing contact with Father. But for the girlfriend's presence in his home, Father would have transitioned to unsupervised visits; in fact, DCS considered transitioning one of the children back to Father's care in early 2016, but did not move to do so because the girlfriend continued to be present in the home.

¶17 The DCS case manager also testified that although Father was receptive to suggestions, DCS had ongoing concerns regarding Father's ability to appropriately care for the children. Father brought snacks to his visits with the children, but he repeatedly provided snacks that caused

them stomach issues; he also was slow to change dirty diapers during visits. Further, the case manager testified she was concerned that Father struggled during visits to control the children so that they were safe; the case manager also said she concerned that Father would be unable to meet the children's daily basic needs.

**¶18** The superior court found that although Father participated in a number of services, "[p]articipation does not equate to progress." The court found Father failed to demonstrate he was able to safely and appropriately parent the children and concluded Father was not credible when he testified he would not allow the girlfriend back into his home. We defer to the court's credibility determinations, and we will not reweigh the evidence on appeal. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶19** The record contains reasonable evidence to support the superior court's findings and conclusions. The children have been in out-of-home care for years. In the period preceding severance, Father failed to appreciate and respond to DCS's concerns regarding his relationship with the girlfriend, who posed a safety risk to the children due to her substance abuse and history of domestic violence.

**¶20** Finally, although Father does not challenge the superior court's finding that severance was in the children's best interests, the record supports that finding. *See Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990). The record supports the court's finding that termination of Father's rights would further the plan to provide the children with permanency and stability. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). The children are doing well in foster placements that are meeting all their needs, and the children are adoptable. *See Mary Lou C.*, 207 Ariz. at 50, ¶ 19; *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

## CONCLUSION

¶21          For the reasons stated above, we affirm the order severing Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA